No. 3938

Second Circuit

COMEGYS v. LOUISIANA TAX COMMISSION ET AL.

(November 7, 1930.   Opinion and Decree.)
(December 23, 1930.   Rehearing Refused.)
(February 2, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Thomas M. Comegys, Jr., of Shreveport, attorney for plaintiff, appellant.

Robert J. O'Neal, of Shreveport, attorney for defendants, appellees.

ODOM, J. Plaintiff, who owned certain lots in Shreveport, improved by brick buildings erected thereon and used for commercial purposes, brought this suit to reduce his assessment, and has appealed from a judgment rejecting his demands.

In the year 1929, plaintiff filed with the tax assessor what he refers to in a sworn list or return of his property for assessment purposes, as follows:

Item 1. Improvements on Lot 44, Tucker Subdivision, less that part taken by Thurmond Street, in Shreveport, La. ........................$ 2,000
Item 2. Improvements on Lot 12, Block 5, Shreveport, La.................... 4,000
Item 3. Improvements on Lot 8 and half of Lot 7, Block 7, Shreveport, La. ................................................................ 28,500
Item 4. Improvements on that property described as Part of Lot 32, Block 69, Ten-Acre Lot 4 and Lot 15, Block 3, Ten-Acre Lot 5, fronting 25 feet on Texas Avenue, per Jeter's City Plat 807, Tract 43, Shreveport, La. ........................ 4,500

The total valuation placed upon the above items being....................$39,000

Plaintiff made no list or return showing the valuation of the lots on which these improvements are situated or the value of the property as a whole. The assessor, it seems, ignored the sworn list or return as made by the property owner, but in the case of each item assessed the lots as improved by the buildings thereon as one piece or item of real estate and placed thereon a value which he says he considered fair and equitable, as compared with other assessments, and not above the actual cash value.

In conformity with section 17, Act No. 170 of 1898, the assessor, in making out his assessment for the purpose of taxation, made a statement showing "the actual cash value of the lands or lots" and "the actual cash value of the improvements thereon." His listing or statement of the value of the improvements on these different pieces of property showed the value of the lots and improvements to be as follows:

The lot described in Item No. 1 was valued at $2,000 and the improvements thereon at $3,000, or a total of $5,000, for the property as a whole; the lot described under Item No. 2 was valued at $20,000 and the improvements thereon at $8,000, or a total of $28,000; in Item No. 3 the lot was listed at $10,000 and the improvements at $40,000, or a total of $50,000; and Item No. 4, lot $5,000, improvements $7,500, or a total valuation of $12,500. So that the assessor's estimate of the value of the improvements on all these lots was $58,500, or $19,500 in excess of the value return made by the property owner.

Plaintiff alleged that the valuation placed by him on the improvements was the actual cash value thereof at the time and he asks that the valuation of the improvements made by the assessor and approved by the police jury and the tax commission be reduced to the amount fixed by him.

The property owned by plaintiff consists of city lots improved by the erection thereon of brick buildings used for commercial purposes. There is no assessment of machinery or implements involved. As stated, plaintiff made no return showing the valuation of the lots themselves or of the value of the lots with the buildings— that is, the enhanced value of the lots arising from the buildings and improvements; and while he alleges that the valuation of the improvements as shown on the rolls made by the assessor is in excess of the actual cash value thereof, he does not allege and does not now contend that the valuation of the property as a whole, that is, of the lots, as improved by the buildings, fixed by the assessor is in excess of the actual cash value of his real estate.

His theory and contention is that under the law, in cases where lands or lots are improved by buildings erected thereon, there must be two separate assessments— one of the lands or lots and another of the buildings. We do not think so.

Real estate as defined in section 91, Act No. 170 of 1898, means and includes "not only land, city, town and village lots, but all things thereunto pertaining and all structures and other things so annexed and attached thereto as to pass to the vendee by the conveyance of the land or lot."

The brick buildings or improvements on these lots are immovable by their nature and form part of the real estate. Each lot with the building thereon constitutes an item or a piece of real estate which for assessment purposes must be valued as a whole. The statutory method of arriving at the value of improved lands and lots for assessment purposes is to "take into consideration the enhanced value of the same arising from the buildings and improvements thereon." (Section 17, Act No. 170 of 1898.) Behan v. Board of Assessors, 46 La. Ann. 870, 15 So. 397.

The actual cash value of property is the constitutional basis for taxation, and in the absence of any contention or showing of discrimination or inequality with other assessments, the property owner has no right to have his assessment reduced unless he can show that the value placed upon it by the taxing authorities is in excess of its actual cash value. In the present case there is no suggestion of discrimination or inequality, nor is it alleged or contended that plaintiff's property as a whole, that is, the lots as improved, is assessed above its actual cash value. In fact, plaintiff's own testimony shows that the value of the property is in excess of that placed upon it by the assessor. For instance, the lot and improvements listed under Item No. 1 are valued as a whole by the assessor at $5,000; that listed under Item No. 2 at $28,000; that listed under Item No. 4 at $12,500. Plaintiff testified that he would not sell at these figures, and in the opinion of prominent realtors of the city, the actual cash value of the property is considerably more. The other item, listed as the Arlington Hotel, is assessed at $50,000. Plaintiff said if he were offered that price he would seriously consider the offer, but did not say that he would accept it.

Plaintiff testified, and there is other testimony to the same effect, that in some instances the valuation placed by him on the buildings themselves is approximately

correct and that the assessor's valuation of them on his rolls is excessive. But if that be true, the fact will avail plaintiff nothing for the reason that the buildings were not and could not be assessed separately from the lots. The assessor's notation or statement on the rolls, showing his estimate of the value of the improvements was not a separate assessment of them. It may be that in arriving at the value of the lots, as improved by the buildings, the assessor has overstated the value of the buildings. But there was no effort made to show that he did not underestimate the value of the lots. The fact that the assessor erred, if he did, in his estimation of the values in this respect is not material since it manifestly appears that his valuation of the property as a whole is not excessive, but, on the contrary, is less than its actual cash value.

Counsel for plaintiff has favored us with an exhaustive brief in which he makes a very able and ingenious argument in support of the theory on which the suit is based. His contention is that the assessor, in listing real estate for purposes of taxation, must make two separate assessments where land or lots are improved—one assessment of the lands or lots themselves, and another of the buildings and improvements. He bases his argument and conclusion on section 10, Act No. 140 of 1916, as amended by Act No. 211 of 1918, sec. 1, which provides in paragraph 3 that it shall be the duty of the board of state affairs "to require the assessors to make up assessment rolls in a formal manner, and according to a method to be prescribed by the Board; to require the separate valuation and assessment of improved and unimproved property and the improvements thereon."

By adopting the acts of 1916 and 1918, the Legislature did not intend to change the method of making assessments, which method is prescribed in the General Revenue Act of 1898. The act of 1916 created a board of state affairs and gave to that board the power and authority, in addition to others, to require assessors to do what they were directed to do under the General Revenue Act of 1898, that is, to make their assessments show the actual value of lands and "lots, squares or parcels of ground in incorporated or unincorporated cities, towns or villages, with all residences, houses, buildings, or other improvements thereon" and to "make a statement showing the actual cash value of land or lots, the actual cash value of improvements thereon." Section 17, Act No. 170 of 1898. But the statement which assessors were required to make on their rolls, showing the value of the improvements, was not for assessment purposes, for the act expressly says:

"The true intent and object of this provision being for the purpose of gathering information and not especially for assessment for purposes of taxation."

This is the general revenue act, and it prescribes the method of making assessments. In assessing lands and lots, assessors are directed to take into consideration "the enhanced value of the same arising from the buildings, and improvements thereon." In other words, the assessor, in assessing an improved lot, shall assess the lot and the buildings thereon as a whole, that is, as one item or piece of real estate, and shall place a value thereon not exceeding the actual cash value of the lot as improved by the buildings. But the assessor is required to make a statement showing the actual cash value of the lot and the actual cash value of the improvements. But this statement, according to the letter of the act, is "for the purpose of gathering information and not especially

for assessment for purposes of taxation," that is, the statement is made for statistical purposes, as we understand it. It was not intended that, in cases where the lands or lots are improved by the erection of buildings thereon, there should be two separate assessments, one of the lands or lots and another of the improvements, where, as in this case, the owner of the land or lot is the owner of the buildings also.

By adopting the acts of 1916 and 1918 above referred to, the Legislature did not intend, we think, to amend or repeal that part of the act of 1898 prescribing the method of making assessments. In fact, we see no conflict between the laws. That portion of section 10, Act No. 140 of 1916, as amended by Act No. 211 of 1918, sec. 1, which, counsel argues, authorizes and directs separate assessments of the improvements on lots and lands, means that the board of state affairs has authority and power to direct and require assessors to furnish information as to the value of improvements on real estate.

Buildings such as those involved in this suit are immovable by their nature and are part of the realty. They would pass to the vendee by conveyance of the lots. The realty or real estate consists of the lots and the buildings and must be assessed as a whole. Where the ownership of lands or lots and the buildings thereon is in one and the same person, the buildings are legally inseparable from the lots for the purposes of assessment and taxation. There can be no split assessment of real estate consisting of lots and improvements thereon, where the ownership of each is in one and the same person.

Counsel cites the case of Tulane Improvement Company v. Board of Assessors, 121 La. 941, 46 So. 928, in which the court held that buildings were properly assessed separately from the land, and the case of Brown v. Hodge-Hunt Lumber Company, 162 La. 635, 110 So. 886, and other cases where it was held that standing timber might and should be assessed separately from the land. The cases are not in point, for the reason that in the Tulane Improvement Company case the owner of the building was not the owner of the land, and, in the other cases, the owners of the land were not the owners of the timber. There were separate estates in each case.

Counsel for the assessor, police jury, and board of state affairs, defendants, did not except to plaintiff's petition on the ground that it set out no cause of action (and it did not), nor did he plead that the improvements on the lots were not subject to separate assessment from the lots, and counsel for plaintiff argues in effect that his failure to do so should be held to be an admission by defendants that the improvements may be assessed separately from the lots. Conceding that counsel should have excepted to the petition instead of objecting to all testimony, as he did, his failure in that respect does not bind the court to consider and accept as true that which is legally untrue. Plaintiff has proceeded all through upon the theory that under the law there should be two separate assessments—one of the lots and the other of the improvements thereon —and contends that the assessor, in noting on his rolls separate valuations, has in fact made two assessments. That is not true. Under the view we take, the case must go against plaintiff, even if it be conceded that he proved every allegation he made.

For the reasons assigned, the judgment appealed from is affirmed, with all costs.